THE PEOPLE *ex rel.* La SALLE NATIONAL BANK, Trustee Under Trust No. 54757, Plaintiff-Appellant, v. HOFFMAN ESTATES PARK DISTRICT, Defendant-Appellee.

First District (2d Division)   No. 84—1667

———

Opinion filed June 25, 1985.

Richard L. Wexler and Joel S. Feldman, both of Sachnoff, Weaver & Rubenstein, Ltd., of Chicago, for appellant.

Donald M. Rose and Kathleen Ross, both of Donald M. Rose, Ltd., of Rolling Meadows, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff-appellant La Salle National Bank, as trustee under a land trust agreement (hereinafter plaintiff), filed a complaint in *quo warranto* that challenged the annexation by defendant Hoffman Estates Park District of a 212-acre parcel of land commonly known as the Poplar Creek Music Theatre. Defendant asserted that plaintiff's action was barred by section 3—14 of the Park District Code, which provides for a one-year statute of limitations. (Ill. Rev. Stat. 1983, ch. 105, par. 3—14.) Both sides moved for summary judgment. Defendant's motion was granted on June 8, 1984, when the trial court ruled that the suit was barred by the statute. Plaintiff appealed.

The sole issue presented is whether the trial court was correct in ruling that the suit was barred by the statute of limitations.

The facts are not in dispute. Plaintiff is the legal titleholder of a 212-acre parcel of land. The village of Hoffman Estates annexed the land with plaintiff's cooperation on August 22, 1978. Defendant park district annexed the land on December 16, 1980, when it passed Ordinance No. 109. The ordinance was recorded in the office of the recorder of deeds on December 24, 1980, along with a plat of the parcel.

The purported annexation was to have been effective on December 24, 1980. Assuming that taxes are levied on a calendar-year basis, defendant could have levied a tax only for the seven remaining days of 1980. The first actual notice that plaintiff could have re-

ceived of the annexation would have been its 1980 tax bill, which would be normally received on or about July 1981. This bill would list the park district as one of the taxing bodies, but the total would have no appreciable impact to alert a taxpayer that the defendant had annexed his land. Nonetheless, the 1980 tax bill is not a part of the record, although later tax bills are included. It is possible that a levy was not made for 1980 and, therefore, the presumed notice of annexation in July 1981 was not actually received.

Ordinance No. 109, which purportedly annexed the land, was passed in a single roll call. The ordinance was comprised of a number of parcels that were identical to the parcels included in the annexation by the village of Hoffman Estates, which is not in dispute. Each of the parcels is less than 120 acres, and Ordinance No. 109 specially provided: "Each parcel shall be considered a separate and distinct annexation of territory to the Hoffman Estates Park District."

As required by statute (Ill. Rev. Stat. 1981, ch. 112, par. 10), plaintiff requested the State's Attorney and the Attorney General to file a *quo warranto* action against defendant. When they refused, plaintiff instituted this action on June 11, 1982. Plaintiff was given leave to file its *quo warranto* complaint on October 19, 1982.

After a series of motions, affidavits, and depositions, both sides moved for summary judgment. The trial court considered only the statute of limitations issue. It ruled that the limitations period was valid, and it granted defendant's motion for summary judgment. This appeal followed.

In order to have a better understanding of the issue presented in this case, a review of the background and legislative history of pertinent statutory enactments is in order.

Annexations by cities and villages are governed by article 7 of the Illinois Municipal Code. (Ill. Rev. Stat. 1983, ch. 24, par. 7—1—1 *et seq.*) Under section 7—1—2, annexations can be made by petition, and under sections 7—1—5 and 7—1—6, by referendum. When the annexation is made by petition, a majority of the legal voters residing in, and a majority of the property owners of record within, the territory proposed to be annexed initiate the action. Annexation by referendum is initiated by the corporate authorities, and the proposal is placed on a ballot submitted to the voters at an election. Therefore, whether by petition or referendum, the voters and property owners have notice of the proposed action. Petition and referendum are generally the two basic methods of annexation used by a municipality.

On the other hand, park district annexations are governed by article 3 of the Park District Code. (Ill. Rev. Stat. 1983, ch. 105, par. 3—1 *et seq.*) Like cities and villages, a park district also can annex by petition, section 3—1, or by referendum, section 3—2. By these methods, voters and property owners would have notice.

However, a park district is given additional authority under certain circumstances. In this case, we are concerned with such a situation.

The Hoffman Estates Park District annexed the property owned by plaintiff by authority of section 3—10 of the Park District Code, which does not require notice to the voters or property owners of record. (Ill. Rev. Stat. 1983, ch. 105, par. 3—10.) In order to properly identify the issue, it is appropriate to consider the statute of limitations involved, section 3—14 (Ill. Rev. Stat. 1983, ch. 105, par. 3—14), and the portion of the statute by which the annexation purports to have been accomplished, section 3—10 (Ill. Rev. Stat. 1983, ch. 105, par. 3—10).

Prior to 1975, there was no statute of limitations dealing with park district annexations. This caused problems when a park district tried to market its municipal securities. Bond counsel and the park districts could never be certain as to the exact assessed value of property within its jurisdiction because they never knew when any annexed territory might be challenged. Bond counsel and the Illinois Association of Park Districts sought and obtained legislative relief. (Senate Debates of the 79th General Assembly, 24th Legislative Day (March 19, 1975), at 25, statement of Senator Fawell.) On August 14, 1975, the one-year statute of limitations became law:

"Sec. 14. Neither the People of the State of Illinois nor any person, firm or corporation, public or private, nor any association of persons shall commence an action contesting either directly or indirectly the annexation of any territory to a park district unless initiated within one year after the date such annexation becomes final or within one year of the effective date of this amendatory Act of 1975 [October 1, 1975] whichever date occurs latest. This amendatory Act of 1975 shall apply to annexations made prior to the effective date of the Act as well as those made on or after the effective date. Where a *limitation of a shorter period is prescribed by statute such shorter limitation applies.*" Ill. Rev. Stat. 1981, ch. 105, par. 3—14.

Some time prior to 1979, about four years after the enactment of the one-year statute of limitations, a park district operating in the

same or substantially the same area as the village of Hillside made an annexation of some territory within the village, pursuant to section 3—10 which, *at that time,* read:

> "Sec. 3—10. Whenever a Park District operating within territory predominately in a city or village or 2 or more cities or villages would become coterminous or nearly coterminous with such city or village or 2 or more cities or villages upon the annexation of additional territory within such municipalities but not incorporated within a park district, such Park District' may annex such additional territory by the passage of an ordinance to that effect. The ordinance shall describe the territory annexed and a certified copy thereof together with an accurate map of the annexed territory shall be filed in the offices of the county clerk and recorder of each county in which the district lies." Ill. Rev. Stat. 1977, ch. 105, par. 3—10.

More than a year later, the Hillside property owners and citizens became aware of the annexation but found that the 1975 statute of limitations rendered them powerless to challenge the annexation. One of the citizens and property owners affected was a State legislator, Representative Willer. This led to the amendment of section 3—10. Representative Willer described the legislative intent on the House Floor:

> "*** House Bill 674 provides for the Park District, seeking to become coterminous with one or more cities or villages, may not annex without a referendum territory which has been in a particular municipality for more than one year, unless such territory so annexed [is] 120 acres or less. The genesis of this Bill is that last [f]all, the village I live in, the village of Hillside, approximately half the village, the residents, and I live in that half, woke up one morning and found we were annexed to Memorial Park District. There had never been a notice or a hearing, much less a referendum. I tracked down the Bill that allowed this legislation [, which] was passed in [1965] and the intent of that Bill certainly was not to have happened to us what happened. The intent was that if a small section of land was developed by a developer in an unincorporated area, and then annexed by the municipality, the Park District could in turn annex it without referendum. So my Bill, I received the help of the Illinois Park District Association, the Bill came out of Committee without a [dissenting] vote, and I would ask your support and I'd be happy to answer any questions. ***

Daniels: Representative Willer, why . . . first of all, it's my

understanding this Bill does not apply to property 120 acres [or] less, is that correct?

Willer: That is correct.

Daniels: Why did you pick the figure 120 acres?

Willer: Well, in working with the Park District Association, they felt that was a fair amount. *** I would also like to point out *** they may take in any size land if they do it within a year after annexation by the village of an unincorporated territory. So [if] they, you know, get their act together, they can do it within a year[']s time no matter what the size. ***

***

Brummer: Representative, in the event of the failure of the Park District to annex within a one year period of time, a trac[t] of land more than 120 acres, how does annexation occur then?

Willer: Then they must go to referendum." (81st Ill. Gen. Ass'y, Transcript of House Proceedings, Third Reading of H.B. 674, 25th Legis. Day, March 29, 1979, at 56-58.)

The bill passed the House without a dissenting vote, passed in the Senate, was signed by the Governor, and became law on September 14, 1979. Thus, the new statute reads:

"Sec. 3—10. Whenever a Park District operating within territory predominately in a city or village or 2 or more cities or villages would become coterminous or nearly coterminous with such city or village or 2 or more cities or villages upon the annexation of additional territory within such municipalities but not incorporated within a park district, such Park District may annex such additional territory by the passage of an ordinance to that effect. *However, no territory may be annexed under this Section more than one year after it has first been included in such municipality unless such territory so annexed is 120 acres or less.*

The ordinance shall describe the territory annexed and a certified copy thereof together with an accurate map of the annexed territory shall be filed in the offices of the county clerk and recorder of each count in which the district lies." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 105, par. 3—10.

We can only speculate as to whether Hoffman Estates Park District belongs to the Illinois Association of Park Districts and thus participated in the enactment of the statute of limitations and the new Hillside remedial legislation. However, we are certain, and the

record reflects, that in July 1980 Hoffman Estates Park District did have the new section 3—10, its legislative history, and a transcript of the House of Representatives floor debate. This was *five months* prior to the enactment of its Ordinance No. 109, which purported to annex plaintiff's property.

■ The chief purpose of a statute of limitations is "certainly not to shield a wrongdoer; rather it is to discourage the presentation of stale claims and to encourage diligence in the bringing of actions." (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun &* *Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 137, 334 N.E.2d 160.) "There can be no justification for the annexation of territory in the absence of statutory authorization therefor, and when there is no such authorization, an ordinance purporting to annex territory is a nullity." *People ex rel. Adamowski v. Village of Streamwood* (1959), 15 Ill. 2d 595, 600, 155 N.E.2d 635.

Here, defendant park district attempts to shield itself from a review of the propriety of its actions by invoking the statute of limitations. In 1979, the legislature enacted a remedy to the Hillside incident. At that time, the legislature was aware of the statute of limitations that it enacted in 1975, and it determined that no change was necessary to accomplish its purpose.

■ The facts of this case are substantially similar to the Hillside incident presented to the legislature for relief. We hold that the isolation and premature disposition of the statute of limitations issue without considering the propriety of the defendant's exercise of its annexation powers does violence to the clear intent of the legislature.

Accordingly, the judgment of the circuit court of Cook County is reversed, and the cause remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

STAMOS, P.J., and PERLIN, J., concur.